THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LESTER B. MASON, Defendant-Appellant.

Third District   No. 82—737

Opinion filed November 9, 1983—Rehearing denied December 16, 1983.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

After a jury trial in the circuit court of Peoria County the defendant, Lester Mason, was found guilty of armed robbery. He was sentenced to life imprisonment as a habitual offender.

The first issue which we will consider on this appeal is the defendant's claim he was denied the effective assistance of counsel at his trial. More particularly, the defendant argues he was deprived of such effective assistance of counsel because his attorney neither moved to suppress or object to evidence which, according to the defendant, was illegally seized.

At about 11 a.m. on April 22, 1982, an armed robbery took place at Schoch's Market. Schoch, the store owner, and his sister, a clerk, were accosted by a man with a knife. In response to his threats they turned over to him $260 and he left the store. The robber was described as black, wearing a beige coat and a nylon stocking over his

face. Schoch followed the robber out of the store, hailed a passing van and requested the occupants to follow the robber which they did. Schoch returned to the store and summoned the police. The occupants of the van, Jose and Anita Huerta, gave chase to the robber after he left the store. The robber had passed in front of their van and was wearing a camel coat and a nylon stocking over his head and carried a knife. They lost the robber when he ran down an alley and then into a fenced backyard. After waiting on the street, they saw another black male, having the same height, weight, build and color as the robber, come out of the building into the backyard of which the robber had run. This second black male, who was dressed differently from the first, then got into a car and drove away.

After watching the house for a few more minutes and seeing nothing else happen, the van occupants returned to Schoch's Market and told the police about following the robber to the house at 924 South Warren. Three police officers then went to the house pointed out by the van occupants. Officer Hoskins first knocked on the screen door but received no answer from inside. Hoskins then opened the screen door and knocked on the main door a couple of times. When the door opened by itself, the officers asked if anyone was there. Getting no response, they entered and conducted a complete search. During the search they discovered and seized a coat, nylon mask and a knife which items were later introduced as evidence and identified by the victims as being associated with the robber.

To support a claim of ineffective assistance of counsel the defendant must demonstrate:

> (1) Actual incompetence of counsel, as reflected by the manner in which he functions as a trial attorney and
>
> (2) Substantial prejudice to the defendant resulting from the incompetence (a showing that without the incompetence, the outcome of defendant's trial would probably have been different). *People v. Hills* (1980), 78 Ill. 2d 500, 401 N.E.2d 523.

The question which arises in this case is whether the failure to file a pretrial motion to suppress evidence under the circumstances disclosed by the testimony can be characterized as actual incompetence. Like other phases of his representation, the pretrial phase of an attorney's activities are a part of his professional duties. Depending on the circumstances this may require the filing of pretrial motions to suppress confessions (*People v. Neeley* (1980), 90 Ill. App. 3d 76, 412 N.E.2d 1010; *People v. Odom* (1966), 71 Ill. App. 2d 480, 218 N.E.2d 116) or for the suppression of evidence (*People v. Harter* (1972), 4 Ill. App. 3d 772, 282 N.E.2d 10). To the extent that the

State argues that the decision to file or not to file a pretrial motion to suppress evidence is a matter of trial strategy or tactics not reviewable, we believe its reliance on *People v. Gallardo* (1983), 112 Ill. App. 3d 764, 445 N.E.2d 1213, *People v. Reppa* (1982), 104 Ill. App. 3d 1123, 433 N.E.2d 1091, and *People v. Hines* (1975), 34 Ill. App. 3d 97, 339 N.E.2d 489, is misplaced. In each of the foregoing cases the court did proceed to review defense counsel's conduct even after suggesting such conduct was not reviewable. The notion that defense counsel's decision is not reviewable seems to have arisen from ideas such as those discussed in *People v. Gray* (1965), 33 Ill. 2d 349, 211 N.E.2d 369, where defense counsel did not pursue a motion to suppress a confession because the defendant denied making any statements to anybody. The court in *Gray* observed that the practice had been not to permit hearings on suppression motions where the defendant denied making any statements and it was the attorney's decision based on this state of facts which was described as one of tactics. However, what is referred to is the general belief that an attorney is not required to raise futile, frivolous or nonexistent defenses.

Was defense counsel actually incompetent in failing to file a suppression motion in this case? We believe not.

■ Although the evidence was seized as the result of a warrantless entry into and search of defendant's premises, we believe the evidence supports the burden of the officers to establish the legality of the search under one of the exceptions to searches requiring warrants. Under the authority of *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543, and *People v. Carmack* (1982), 103 Ill. App. 2d 1027, 432 N.E.2d 282, we conclude the entry and search were made under exigent circumstances, one of the generally recognized exceptions justifying warrantless searches. We believe from the testimony of the van occupants who followed the robber, watched the house and then summoned the police officers, it could well have been concluded the robber may have still been in the house. Both the testimony of the van occupants and of the police officers is consistent with this view, and we believe the entry and search of the premises was reasonable.

■ If the evidence should not have been suppressed then neither the decision of defense counsel to file a suppression motion nor his failure to do so can be considered actual incompetence. This being so, it follows the defendant was not denied the effective assistance of counsel.

The defendant next claims that the habitual-criminal statute (Ill. Rev. Stat. 1981, ch. 38, par. 33B—1 *et seq.*) is violative of due process under the fourteenth amendment to the United States Constitution

and under article I, section 2 of the Illinois Constitution; and that it is violative of article I, section 8 of the Illinois Constitution, which requires that after indictment the defendant shall have the right "*** to demand the nature and cause of the accusations and have a copy thereof; ***."

The habitual-criminal statute at section 33B—1 *et seq.* of the Criminal Code of 1961 states that every person who has been twice convicted in any State or Federal court of an offense that contains the same elements as an offense classified in Illinois as a Class X felony or murder and is, thereafter, again convicted of a Class X felony or murder shall be adjudged an habitual criminal and sentenced to life imprisonment.

The defendant's claim that this statute is violative of due process and the notice-of-charges provision in the Illinois Constitution is based upon the statute's requirement that the State notify the defendant of its intention to invoke the terms of the act sometime after a plea or verdict or finding of guilty and before sentence is imposed. The reasoning is that this notification period could result in the defendant being first apprised of the State's intentions at the time of the sentencing hearing, affording the defendant little time to adequately prepare a defense to the statute's invocation.

However, prior to any discussion of the constitutionality of the statute's notice requirement, we must first determine whether the defendant has been in any way aggrieved by the operation of the statute's notice provisions. If not, the defendant has no standing to question the constitutionality of such provisions. *People v. Merchel* (1980), 91 Ill. App. 3d 285, 414 N.E.2d 804.

On the day of the sentencing hearing, the State filed its notice of the defendant's prior convictions and informed the court of its intention to seek an habitual-criminal determination. The trial court then asked defense counsel if a continuance was desired in order to prepare for the hearing. Defense counsel informed the court that he had reviewed the presentence report containing references to the defendant's prior convictions and that a continuance was not necessary. Thus, the defendant had every opportunity to prepare an adequate defense to the enforcement of the habitual-criminal statute. Because the defendant was not aggrieved by the operation of the statute's notice provisions, he cannot now raise his related United States and Illinois constitutional arguments.

The defendant further argues that under the habitual-criminal statute the State is not required to prove the defendant to be a habitual offender beyond a reasonable doubt, thus, violating the defend-

ant's due process rights. This claim is premised upon language contained in section 33B—2(b) of the statute which indicates that a duly authenticated copy of the record of any alleged former conviction of an offense set forth in the statute shall be *prima facie* evidence of such former conviction.

We do not believe that this language exempts the State from proving the defendant's former convictions beyond a reasonable doubt. (See *People v. Casey* (1948), 399 Ill. 374, 77 N.E.2d 812; *People v. Stewart* (1961), 23 Ill. 2d 161, 177 N.E.2d 237.) In this respect, the State did meet its burden of proof by submitting as evidence the defendant's prior criminal record of two convictions for armed robbery and testimony of a probation officer that in the preparation of his presentence investigation report, the defendant admitted in writing that he had prior 1965 and 1970 convictions for robbery. The defendant did not rebut the State's evidence at the sentencing hearing.

The defendant has also argued that the habitual criminal statute violates the separation-of-powers provision of the Illinois Constitution, article II, section 1; the due process and equal protection provisions of the United States Constitution, fourteenth amendment, and the Illinois Constitution, article I, section 2; and the eighth amendment to the United States Constitution in that the statute completely removes the sentencing function from the judge and gives it to the prosecutor allowing the prosecutor absolute, unguided discretion in determining whom he wishes to sentence to life imprisonment. In addition, the defendant claims that by requiring the imposition of natural life imprisonment while prohibiting the consideration of the offender's personal characteristics and the seriousness of the offense, the habitual criminal statute violates due process under the Illinois and United States constitutions and the eighth amendment to the United States Constitution.

These issues have been previously dealt with in *People v. Withers* (1983), 115 Ill. App. 3d 1077, 450 N.E.2d 1323. With reference to the separation of powers argument, the court in *Withers* stated that the language of section 33B—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 33B—1 *et seq.*) does not explicitly delegate the power to choose which defendant shall be made subject to its terms. Its provisions apply to every person who meets its criteria. The use of permissive terminology indicating that the prosecutor "may" file with the court a written statement of the defendant's former convictions can be read as prescribing how the prosecutor brings to the court's attention a defendant's prior conviction history. Thus, the court con-

cluded that the separation of powers doctrine was not violated by the statute.

■ In addressing the eighth amendment argument, the court cited several United States Supreme Court decisions dealing with recidivist statutes, indicating that the United States Supreme Court had recognized as constitutionally permissible sentences of life imprisonment without the possibility of parole. The court continued in its analysis by stating that the mandatory aspect of section 33B—1 of the statute is not triggered until three Class X felonies have been committed within 20 years of the first conviction. Therefore, two previous adjudications have given the defendant the opportunity to present mitigating factors so that the trial court could exercise its discretion in determining the appropriate sentencing alternative. The court noted that this approach had been taken in considering the constitutionality of section 5—12 of the Juvenile Court Act involving juvenile offenders (Ill. Rev. Stat. 1981, ch. 37, par. 705—12), in *People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, 413 N.E.2d 1269. The court then held that the habitual-criminal statute did not violate the eighth or fourteenth amendments to the United States Constitution.

We believe that *Withers* should be adhered to in the case at hand; however, we would note that a majority of the members of the Illinois Supreme Court in dissenting and concurring opinions in two recent cases *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, 397 N.E.2d 809, and *People v. Lewis* (1981), 88 Ill. 2d 129, 430 N.E.2d 1346, has set forth an analysis of the separation of powers doctrine with reference to the Illinois death-penalty statute (Ill. Rev. Stat. 1981, ch. 38, par. 9—1), which could be applicable to the habitual-criminal statute.

Justices Ryan, Goldenhersh and Clark dissenting in *Cousins*, and Justices Ryan, Goldenhersh and Clark specially concurring and Justice Simon dissenting in *Lewis*, expressed the view that the provision in the death-penalty statute which gives the State the power to request a separate sentencing hearing to consider the factors necessary in imposing the death penalty vests with the prosecutor the discretion to conduct or not to conduct such a sentencing hearing, which is essentially a judicial function. Thus, the separation of powers doctrine of section 1, article II of the Illinois Constitution is violated.

Section 33B—2(a) of the Criminal Code of 1961 gives the prosecutor the same type of power relative to initiating a consideration by the court of whether the defendant should be adjudged an habitual criminal. At this point in time, the supreme court has not considered this issue directly. Therefore, we believe that the reasoning in *Withers*

524

should be followed and applied in the case now before us.

■■■ The defendant's final contention is that the habitual-criminal statute violates the United States and Illinois constitutional provisions regarding *ex post facto* laws. (U.S. Const., art. I, sec. 9; Ill. Const., art. I, sec. 16.) This contention is without merit. Recidivist statutes have been consistently upheld as not violative of *ex post facto* constitutional provisions. *People v. Hanke* (1945), 389 Ill. 602, 16 N.E.2d 395; *People v. Williams* (1967), 36 Ill. 2d 505, 224 N.E.2d 225.

Accordingly, for the reasons set forth above, the judgment of conviction and the imposition of a life sentence by the circuit court of Peoria County are affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.