THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM McNEIL, a/k/a Otis McNeil, Defendant-Appellant.

First District (2nd Division)   No. 82—1752

Opinion filed June 26, 1984.

Steven Clark and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Lawrence R. Stasica, and Mary Ann Sullivan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DOWNING delivered the opinion of the court:

Following a bench trial, defendant, William McNeil, was found guilty of two counts of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2), two counts of unlawful restraint (Ill. Rev. Stat. 1979, ch. 38, par. 10—3), two counts of armed violence (Ill. Rev. Stat. 1979, ch. 38, pars. 33A—2, 10—3), one count of home invasion (Ill. Rev. Stat. 1979, ch. 38, par. 12—11(a)(1)), and one count of felonious unlawful use of weapons (Ill. Rev. Stat. 1979, ch. 38, pars. 24—1(a)(10), (b)). A sentence of natural life imprisonment was imposed pursuant to the habitual criminal act. Ill. Rev. Stat. 1981, ch. 38, par. 33B—1.

Two grounds for reversal are presented by defendant: (1) that section 33B—1 of the Criminal Code of 1961 is violative of the United States and Illinois constitutions; and (2) that the judgment of conviction on the two armed violence counts, which was predicated on the offense of unlawful restraint, must be vacated in accordance with *Peo-*

*ple v. Wisslead* (1983), 94 Ill. 2d 190, 446 N.E.2d 512. As the issue of reasonable doubt was not raised, only a brief summary of the evidence is necessary.

On the night of October 12, 1981, defendant and two other men forcibly entered Gilbert Midina's basement apartment, located in Chicago, after having falsely identified themselves as police officers. Midina and his brother-in-law, Ricky Cruz, were robbed at gunpoint, bound and gagged. After the three men left the apartment, Midina freed himself, went to a neighbor's house and notified the police.

Soon thereafter, Officers Kruk and Lenihan of the Chicago police department, who were on patrol in the 10th District, curbed a vehicle with three occupants for having failed to stop at a stop sign. While talking with the driver, Officer Kruk observed defendant exit the car from the passenger side, walk toward the front, crouch down and throw an object underneath the vehicle. This object, a .38-caliber handgun, was immediately recovered by the officer. Defendant was then placed under arrest for the unlawful use of a weapon, handcuffed and transported to the 10th District station. A subsequent search of defendant's person and the automobile revealed a Chicago police department badge, jewelry, cameras, telephones, a television set, and a wallet containing Midina's identification. Both Midina and Cruz later identified defendant in a lineup conducted at the 10th District station.

Defendant was thereupon charged with two counts of armed robbery, two counts of unlawful restraint, two counts of armed violence, one count of home invasion and one count of felonious unlawful use of weapons. Following a bench trial, he was found guilty as charged. Due to defendant's previous convictions in 1966 and 1979 for armed robbery, the trial court ruled that he was a habitual criminal and, accordingly, sentenced defendant to a term of natural life imprisonment.

Defendant now appeals from the judgment of conviction on the two armed violence counts, and requests that this court vacate the sentencing order and remand the cause to the circuit court for resentencing.

I

On June 29, 1982, the trial court found defendant to be a habitual criminal in light of his "tragic history of being a professional armed robber." As a result, a sentence of natural life imprisonment was imposed pursuant to the habitual criminal act which provided, in pertinent part, that:

"(a) Every person who has been twice convicted in any state

or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony or murder, and is thereafter convicted of a Class X felony or murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal.

* * *

(e) Except when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to life imprisonment." Ill. Rev. Stat. 1981, ch. 38, pars. 33B—1(a), (e).

Defendant contests the constitutional validity of this legislative enactment.

A

■ At the outset, we note that a strong presumption of constitutionality attaches to a statute. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 499, 431 N.E.2d 344.) The burden rests upon the party attacking a particular law to show that it is clearly arbitrary, unreasonable and has no foundation in the State's police power. (*People v. Copeland* (1980), 92 Ill. App. 3d 475, 479-80, 415 N.E.2d 1173.) The paramount consideration in construing a statute is to give effect to the legislative intent. (*People v. Beam* (1979), 74 Ill. 2d 240, 242, 384 N.E.2d 1315.) "In determining legislative intent, a court may examine not only the language used, but also the reason for the law and the evil to be remedied, as well as the objects and purposes of the statute." *People v. McPherson* (1978), 65 Ill. App. 3d 772, 774, 382 N.E.2d 858.

■ Defendant first argues that it is the prosecutor who, by filing a petition for the imposition of natural life imprisonment, actually determines the sentence to be imposed. We disagree. By filing the petition, the State merely initiates proceedings under the habitual criminal act. It is the legislature which, in exercising its recognized power to fix punishments for crimes, has necessarily limited a trial judge's discretion as to the imposition of a life sentence pursuant to the habitual criminal act. We regard such a limitation to be constitutionally permissible since the Illinois Supreme Court has already held that "[t]he legislature may authorize the court to exercise broad discretion in the imposition of sentences by providing for the fixing of sentences within prescribed minimum and maximum years. Or the legislature may restrict the exercise of judicial discretion in sentencing, *such as by providing for mandatory sentences*." (Emphasis added.) *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, 549, 397 N.E.2d 809, *cert. denied sub nom. Brown v. Illinois* (1980), 445 U.S. 953, 63 L. Ed. 2d 788, 100 S. Ct. 1603.

This judicial deference to legislative determinations of punishment

has been further evinced in the recent case of *People v. Taylor* (1984), 102 Ill. 2d 201. In *Taylor*, the supreme court held that the provision in section 5—8—1 (a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(c)) for a mandatory sentence of natural life imprisonment upon conviction of murdering more than one victim, did not unconstitutionally infringe upon the judicial power. *People v. Taylor* (1984), 102 Ill. 2d 201, 209.

Defendant nonetheless claims that the habitual criminal act is constitutionally defective in that it preempts the sentencing function of the trial court by delegating to the prosecution the power to choose which defendants shall be subject to its terms. However, this court has recently held that the judicial function of sentencing is not preempted by the State, for the provisions of the habitual criminal act apply to "every person" meeting its criteria. (*People v. Tobias* (1984), 125 Ill. App. 3d 234, 240; *People v. Withers* (1983), 115 Ill. App. 3d 1077, 1088, 450 N.E.2d 1323, *cert. denied* (1984), 465 U.S. 1052, 79 L. Ed. 2d 726, 104 S. Ct. 1332.) As a consequence, the act places no discretion in the prosecution to determine which defendants qualify for a term of life imprisonment; rather, precise guidelines are set forth to enable the trial judge to determine the applicability of the recidivist statute.

## B

■ Next, defendant contends that the mandatory imposition of a life sentence under the habitual criminal act is constitutionally invalid since it allegedly precludes consideration of the seriousness of the offense, as well as the rehabilitative potential of the offender.

It is argued that *Solem v. Helm* (1983), 463 U.S. 277, 77 L. Ed. 2d 637, 103 S. Ct. 3001, is dispositive of this issue. *Solem*, however, is readily distinguishable from the case at bar in that the defendant there was sentenced to a term of life imprisonment under a South Dakota recidivist statute because of his conviction for uttering a "no account" check for $100, coupled with his six prior *nonviolent* felony convictions. The Supreme Court concluded that defendant's sentence was "significantly disproportionate to his crime, and is therefore prohibited by the Eighth Amendment." *Solem v. Helm* (1983), 463 U.S. 277, 303, 77 L. Ed. 2d 637, 658, 103 S. Ct. 3001, 3016.

To the contrary, the applicability of the habitual criminal act here was premised on defendant's repeated convictions for armed robbery—a *violent* offense against the person, characterized as a Class X felony. (Ill. Rev. Stat. 1979, ch. 38, par. 18—2(b).) We therefore do not consider *Solem* binding; the imposition of life imprisonment is not, in our opinion, constitutionally disproportionate with successive armed

robberies committed over a period of 16 years.

In addition, as we noted in *Withers*, our supreme court has held that since there is prior consideration of mitigating circumstances in the two previous adjudications, the "rehabilitative purposes of the system are not completely foresaken, but after the commission by an individual of a third serious offense, the interest of society in being protected from criminal conduct is given additional consideration." (*People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, 80, 413 N.E.2d 1269.) This reasoning is in accord with the *Taylor* decision, wherein the supreme court concluded that "[t]he rehabilitative objective of [Ill. Const. 1970, art I, sec. 11] should not and does not prevent the legislature from fixing mandatory minimum penalties where it has been determined that no set of mitigating circumstances could allow a proper penalty of less than natural life ***." *People v. Taylor* (1984), 102 Ill. 2d 201, 206.

■ Regarding the instant matter, defendant's predicate armed robbery convictions in 1966 and 1979 necessitated consideration of his rehabilitative potential during the attendant sentencing hearings. The constitutional mandate of rehabilitative recognition had thus been fulfilled. (*People v. Tobias* (1984), 125 Ill. App. 3d 234, 241.) In spite of previous opportunities to once again acquire useful membership in our society, defendant has continually manifested an egregious disregard for the rights of other citizens. His permanent removal from society was thereby warranted as a prevention of inevitable, violent dereliction.

## C

■ Defendant maintains that the habitual criminal act is violative of the double jeopardy and *ex post facto* provisions of the United States and Illinois constitutions. Specifically, it is argued that defendant has been punished a second time for each of his previous armed robbery convictions, and that he has been punished for conduct which occurred prior to February 1, 1978, the effective date of the habitual criminal act. These arguments merit brief attention.

First, defendant was not punished twice for the same offense, for it is well settled that "[t]he punishment is for the *new* crime only, but the penalty is made heavier by statute because the defendant is an habitual criminal." (Emphasis added.) *People v. Lawrence* (1945), 390 Ill. 499, 504, 61 N.E.2d 361, *cert. denied* (1945), 326 U.S. 731, 90 L. Ed. 435, 66 S. Ct. 38.

■ Second, the Illinois Supreme Court has also declared that "the Habitual Criminal Act does not create a new and independent crime. It merely prescribes circumstances wherein one found guilty of

a specific crime may be more severely penalized because of a previous conviction." (*People v. Lawrence* (1945), 390 Ill. 499, 504, 61 N.E.2d 361.) Here, the trial court allowed into evidence the certified copies of defendant's prior armed robbery convictions for the sole purpose of establishing matters in aggravation in order to support the rendition of a natural life sentence. This limited use of prior adjudications was therefore not, in our opinion, violative of *ex post facto* prohibitions. See *People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, 77-78, 412 N.E.2d 1269.

## D

Defendant contends that the habitual criminal act is unconstitutional in that it does not require proof beyond a reasonable doubt of "THE EXITENCE [*sic*] OF THOSE FACTS REQUIRING THE ENHANCED PENALTY." This contention is devoid of merit since the "facts" which trigger application of section 33B—1 are two prior *convictions*, as opposed to charges, of a Class X felony or murder followed by a third *conviction*, as opposed to charge, of a class X felony or murder. (See *People v. Mason* (1983), 119 Ill. App. 3d 516, 521-22, 456 N.E.2d 864.) Defendant nonetheless asserts that the State failed to satisfy subsection (d)(4) of the habitual criminal act, which requires the second predicate offense to have been committed after the first predicate conviction.

Following defendant's convictions for the instant offenses, the State filed a verified petition for the imposition of life imprisonment which indicated that defendant was charged with armed robbery in "Case 65—2523" for an offense that he committed on or about September 11, 1965. On April 28, 1966, a jury found defendant guilty as charged, and judgment was accordingly entered against him. Defendant was again charged with armed robbery in "Case 75—5833" for an offense that he committed on or about April 16, 1975; a plea of guilty to this second offense was entered on September 19, 1979.

■ During the sentencing hearing held in connection with the instant offenses, the State produced certified copies of these two previous armed robbery convictions. Defendant, however, refused to acknowledge their authenticity. Thereupon, the State produced witnesses in support of the questioned exhibits. A commander of the Chicago police department testified that, with respect to the 1966 conviction, he apprehended defendant for the armed robbery of a furrier. It was further disclosed that defendant had in fact been found guilty as charged after a trial by jury. An assistant State's Attorney then corroborated this testimony by stating that he had prosecuted defendant in the 1966 case, and that defendant was subsequently

found guilty of armed robbery and received a sentence of 15 to 25 years' imprisonment. Regarding the second predicate offense, another assistant State's Attorney testified that on September 19, 1979, defendant withdrew his plea of not guilty, entered a plea of guilty to the commission of the 1975 armed robbery, and received a sentence of 10 years' imprisonment. When the certified copies of these two previous convictions were offered into evidence, defense counsel did not contest their authenticity; rather, he stated that he was "just entering a general objection." The proffered exhibits were then ruled admissible.

The introduction of such documentary evidence, coupled with the testimonial evidence presented in support thereof, justified the trial court's finding that defendant was, in fact, convicted of the two previous armed robberies. We note that the second of these two predicate offenses could not have been committed before the first armed robbery conviction in 1966. This is because, under the Criminal Code of 1961, the 1975 prosecution for the second armed robbery had to be commenced within three years of its commission. Ill. Rev. Stat. 1973, ch. 38, par. 3—5(b).

In essence, the habitual criminal act is a constitutional exercise of this State's police power to protect our society from habitually violent and heinous criminals. Since defendant's recidivation to violent crimes from 1966 through 1981 satisfied the statutory prerequisites for invocation of the act, we conclude that the trial court's imposition of a term of life imprisonment was thereby warranted.

## II

The final question for resolution is whether defendant's convictions on the two armed violence counts, which were both predicated on the offense of unlawful restraint, must be vacated under the authority of *People v. Wisslead* (1983), 94 Ill. 2d 190, 446 N.E.2d 512.

In *Wisslead*, the supreme court affirmed the circuit court's dismissal of an armed violence charge, holding that the armed violence statute, as applied to the unlawful restraint statute, was violative of the constitutional assurances of due process and proportionate penalties. The State nonetheless urges that the reasoning in *Wisslead* be rejected, and that the "well-reasoned and practical" dissent to the majority opinion be adopted instead.

It is fundamental to our judicial system that "[w]here the supreme court has declared the law on any point, it alone can overrule or modify its previous opinion, the lower judicial tribunal being bound to follow such decision in similar cases." (*Super Liquors, Inc. v. Illinois*

*Liquor Control Com.* (1983), 113 Ill. App. 3d 229, 232, 446 N.E.2d 945, *appeal denied* (1983), 94 Ill. 2d 558.) Since it is solely the supreme court's prerogative to reconsider the underlying rationale in *Wisslead,* we therefore reject the State's arguments and vacate defendant's convictions for armed violence. (See *People v. Alexander* (1983), 118 Ill. App. 3d 33, 38, 454 N.E.2d 691, *appeal denied* (1984), 96 Ill. 2d 568.) The vacation of these two convictions does not necessitate resentencing defendant on the remaining convictions, for the imposition of life imprisonment was premised on his instant as well as prior convictions for armed robbery.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and vacated in part in accordance with the views expressed herein.

Affirmed in part; vacated in part.

HARTMAN, P.J. and PERLIN, J., concur.