UNITED STATES of America ex rel. John DURHAM, Petitioner,

v.

Michael O'LEARY, Warden, Respondent.

No. 87 C 10762.

United States District Court, N.D. Illinois, E.D.

March 28, 1988.

John Durham, pro se.

Michael J. Singer, Terence Madsen, Asst. Attys. Gen., Chicago, Ill., for respondent.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Petitioner John Durham seeks habeas relief pursuant to 28 U.S.C. § 2254 from his attempted murder conviction and sentence of natural life imprisonment without parole. For the reasons stated herein, the petition is denied.

## I

Set forth below are those portions of the trial evidence pertinent to our decision. After a bench trial in the Circuit Court of Cook County, Durham was convicted of attempted murder. The state relied primarily on the testimony of the victim Steven Phillips. Phillips testified that at 4:30 a.m. the morning of December 20, 1984, Durham and an accomplice broke into Phillips' apartment and awakened him in his bed. Durham shot Phillips ten times as Phillips attempted to escape, the details of which are set forth in the state appellate court's decision. *People v. Durham*, No. 85–3267, slip op. (1st Dist. June 26, 1987) [156 Ill.App.3d 1168, 118 Ill.Dec. 902, 522 N.E.2d 357 (table)]. There was a nightlight in the bedroom. Four days prior to the attack incident, Phillips was assaulted and had been suffering from blurred vision as a result. Phillips had known Durham for several years prior to that morning and further related that he had testified against Durham on behalf of his employer William Underwood in a November 1984 civil action.

The prosecution presented three other witnesses. Charlie Chamberlain, who resided in the same apartment building as Durham, testified as follows. At 4:00 a.m., one-half hour prior to the shooting, Durham and his alleged accomplice came to Chamberlain's apartment and asked for a plastic bag. Durham pulled "something shiney out of his pocket [and Chamberlain] assumed it was a gun." Transcript of Proceedings ("Tr.") at 21, 30.

Officer Zapolsky corroborated Phillips' version of the events that morning by testifying to the evidence found at the scene of the crime. He also stated that despite having sustained two gunshot wounds in the mouth, two in the back, two in the stomach and four more in other parts of his body, Phillips retained consciousness and identified Durham as the assailant immediately after the shooting.

Finally, Officer Bogdalek testified that immediately prior to Durham's arrest later that day, Durham identified himself as Tommy Oscar. After Officer Bogdalek showed Durham a photograph, Durham admitted his true identity. Tr. at 125–26.

Durham took the stand in his own behalf and testified to an alibi. He stated that he was at his girlfriend's apartment that morning since as early as 3:00 a.m. He admitted that he went to Chamberlain's apartment but insisted that the visit occurred at 4:30 p.m. the prior evening. In addition to an extensive cross-examination, the prosecution impeached Durham with two stipulated prior convictions for armed robbery. Tr. at 175.

The trial judge orally presented findings of fact and found Durham guilty of attempted murder. The prosecution then notified the court that it intended to seek the mandatory sentence of life imprisonment without parole under the Illinois Habitual Offenders Act. Ill.Rev.Stat. ch. 38, ¶ 33B–1, *et seq.* (1983). At the sentencing hearing, the prosecution presented certified copies of Durham's prior convictions, one of which identified the guilty party as "Melvin Cook alias John W. Durham." Durham did not admit to or deny the prior convictions, instead challenging the certified copies as insufficient to prove beyond a reasonable doubt that Durham had been convicted of the crimes identified in the certified copies. Relying solely on the certified copies, the trial judge found that Durham had been convicted twice of armed robbery and accordingly sentenced Durham to life imprisonment without parole. After unsuccessful appeals before the Illinois Appellate and Supreme Courts, Durham filed this habeas petition challenging the conviction as insufficiently supported by the evidence and the sentence as unconstitutional.

## II

### Sufficiency of the Evidence for Conviction

■ In a federal habeas proceeding in which the petitioner challenges his conviction as unsupported by sufficient evidence, we must view the evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh'g denied*, 444

U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). We presume that the factfinder drew only reasonable inferences in weighing the evidence, and we will not reassess the credibility of witnesses who testified at trial. *United States v. Whaley*, 830 F.2d 1469, 1472 (7th Cir.1987); *United States v. Hammond*, 826 F.2d 577, 579 (7th Cir. 1987). With these guidelines in mind, if we find sufficient evidence from which a rational trier of fact could conclude beyond a reasonable doubt that the defendant was guilty, we must uphold the conviction. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. After reviewing the transcript of Durham's trial and the judge's findings of fact, we find that the judge reasonably found Durham guilty of attempted murder beyond a reasonable doubt and accordingly uphold the conviction.

Twice Phillips positively identified Durham as the assailant—immediately after the shooting and at trial. Other testimony and evidence buttressed Phillips' identification. The long sequence of events that morning provided Phillips with numerous opportunities to get a good glimpse of his assailant. Phillips had known Durham for several years. Officer Zapolsky's testimony as to the evidence found at the scene immediately after the incident corroborated the important aspects of Phillips' version of the events. Chamberlain testified that he saw Durham, perhaps carrying a gun, and another individual only one-half hour prior to the offense. The judge chose to credit Chamberlain's testimony and reject Durham's alibi as fabricated. Officer Bogdalek's testimony and Durham's two prior convictions for armed robbery seriously brought Durham's credibility into question.

Durham seeks to discredit Phillips' identification testimony by contending that Phillips had a strong motive to lie—to assist Underwood in vacating a judgment that Durham had obtained in a civil action. We fail to see how falsely identifying Durham at Durham's attempted murder trial helps Underwood vacate a judgment in an unrelated civil action. And even if there is a causal connection, the trial judge already assessed Phillips' credibility and chose to reject this motive argument.

Durham additionally argues that certain inconsistencies in Phillips' testimony prove that Phillips fabricated the entire story. For example, Phillips stated that he heard a crash as the assailant broke into his apartment, but that he was not awakened until someone tapped his feet. Phillips also testified on one occasion that he did not turn to look at his assailant while he was running from his bed, but later testified that he did. We find these inconsistencies of no consequence. Phillips was consistent in his testimony as to the most important events of that morning—how the assailant entered, how and where he was shot and the numerous opportunities he had to identify his assailant. The trial court was reasonable in concluding that the inconsistencies do not create a reasonable doubt as to Durham's guilt.

Finally, Durham alleges that Phillips could not have clearly seen his assailant to identify him. Specifically, the only light in the bedroom came from a nightlight, Phillips had been suffering from blurred vision and he had just been aroused from his sleep. While these facts may be probative of Phillips' ability to identify the assailant, they are insufficient as a basis for concluding that the trier of fact was unreasonable in crediting Phillips' identification testimony and finding Durham guilty beyond a reasonable doubt. Accordingly, Durham's petition for relief from the conviction is denied.

## III

### Sentence

Based on its finding that Durham had two prior convictions for armed robbery, the trial court sentenced Durham to life imprisonment without parole as required by the Illinois Habitual Offenders Act. The statute provides that the court must, at the request of the prosecution, sentence to life imprisonment without the possibility of parole an individual convicted in a twenty-year period of three Class X felonies or murder. Ill.Rev.Stat. ch. 38, ¶ 33B–1. Class X felonies are crimes of violence, including rape, armed robbery, aggravated

arson and attempted murder. *Id.,* ¶¶ 12–14, 18–2, 20–1.1, 8–4(c)(1). The statute further provides that a "duly authenticated copy of the record of any alleged former conviction of an offense set forth in Section 33B–1 shall be prima facie evidence of such former conviction." If the defendant does not challenge the certified copies, then the court must find that the defendant had been convicted of the two felonies. *Id.,* ¶ 33B–2. Durham contends that the habitual offenders statute violates the Illinois Constitution's separation of powers provision and the Eighth and Fourteenth Amendments of the United States Constitution. We address each in turn.

### A. Separation of Powers Under the Illinois Constitution

■ The Illinois courts have already determined that the statute does not run afoul of the Illinois Constitution. *People v. Durham,* No. 85–3267, slip op. at 8–9 (1st Dist.1987) [156 Ill.App.3d 1168, 118 Ill.Dec. 902, 522 N.E.2d 357 (table)]. We lack the authority to overturn a state court conviction on the grounds that the conviction violates state law. *United States ex rel. Hoover v. Franzen,* 669 F.2d 433, 436–37 (7th Cir.1982). Accordingly, Durham's petition on that basis is denied.

### B. Eighth Amendment Claim

■ Durham argues that the Eighth Amendment prohibits a state from automatically sentencing a three-time felon to nonparole life imprisonment without taking into consideration such mitigating factors as the severity of the crime(s), the personal characteristics of the defendant and the defendant's expressions of remorse. While neither the Supreme Court nor the Seventh Circuit have assessed the constitutionality of this or any identical sentencing statute, they have provided guidelines from which we conclude that a mandatory sentence of life without parole under the Habitual Offenders Act does not violate the Eighth Amendment.

In *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), the Supreme Court held that a mandatory life sentence with the possibility of parole for three theft convictions did not violate the Eighth Amendment. The Court recognized the strong societal interest in protecting itself from recidivists who have been "both graphically informed of the consequences of lawlessness and given an opportunity to reform, all to no avail." *Id.,* 445 U.S. at 278, 100 S.Ct. at 1141. The Court noted that the sentence appeared severe, but found that severity tempered by the possibility of parole. Further, while the Eighth Amendment prohibits grossly disproportionate sentences, it also requires the courts to exercise a strong deference to the state legislature. The Court suggested that this deference may be so strong as to render constitutional any term of imprisonment for a felony:

> [O]ne could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative.

*Id.,* 445 U.S. at 274, 100 S.Ct. at 1139.

Three years later, the Court rejected that position. In *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Court found a sentence of life imprisonment without the possibility of parole disproportionate to the felony of uttering a "no account" check even where the convicted had a record of three convictions for burglary and one conviction for each of the crimes of obtaining money under false pretenses, grand larceny and driving while intoxicated. The majority stated that while the courts should grant "substantial deference" to the state legislature's determination of appropriate punishment, "no penalty is per se constitutional." *Id.,* 463 U.S. at 290, 103 S.Ct. at 3009–10. The Court went on to set forth the criteria that are relevant but not necessarily dispositive to determining the constitutionality of a sentence: the gravity of the offense, the harshness of the penalty and sentences for comparable offenses in the same and other jurisdictions. *Id.,* 463 U.S. at 292, 103 S.Ct. at 3011.

Noting the sharp division among the Supreme Court Justices evidenced by the *Rummel* and *Solem* opinions, the Seventh Circuit has gleaned some "certain principles" applicable to an Eighth Amendment analysis. *United States v. Sato,* 814 F.2d 449, 453 (7th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987). First, as expressed unequivocally in *Solem,* no term of imprisonment is per se constitutional. A court must consider the *Solem* criteria in any challenge to a prison sentence. A legislative decision on the appropriate type and duration of punishment is due substantial deference, and a court should overturn "only the occasional 'manifestly unjust' sentence." *Id.,* quoting *Hutto v. Davis,* 454 U.S. 370, 377, 102 S.Ct. 703, 707, 70 L.Ed.2d 556, *reh'g denied,* 455 U.S. 1038, 102 S.Ct. 1742, 72 L.Ed.2d 156 (1982). In the context of the sentencing of recidivist offenders, the proclivity of the defendant to resume certain crimes and the potential danger those crimes present to people or property are especially important to the Eighth Amendment analysis. *United States v. Kimberlin,* 781 F.2d 1247, 1258 (7th Cir.1985), *cert. denied,* — U.S. —, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986).

Applying these guidelines here, we conclude that a sentence of life imprisonment without parole under the Illinois Habitual Offenders Act does not constitute cruel and unusual punishment. Unlike the crimes involved in *Solem,* the crimes to which the Act applies and of which Durham was convicted are extremely violent crimes posing a direct or indirect danger to the life and health of other persons. The Illinois legislature determined that after three such violent felonies, Illinois' interest in protecting its citizens from an individual that the legislature deems incapable of reform outweighs any factors possibly mitigating the blameworthiness of the defendant. We see no principled or mandated reason for denying the legislature the substantial deference presumed appropriate, notably in the context of recidivist offenders. *Accord, United States ex rel. Robinson v. Chrans,* 660 F.Supp. 241 (C.D.Ill.1987).

Durham alleges that the line of Supreme Court precedents involving capital punishment apply here, thus proscribing a mandatory sentence of nonparole life imprisonment without consideration of potential mitigating factors. While it is true that Durham's sentence is the most severe punishment that Illinois could have imposed short of capital punishment, the stakes in a capital punishment situation are sufficiently distinct that the protections afforded there do not necessarily apply in any non-capital situation:

> Because a sentence of death differs in kind from any sentence of imprisonment, no matter how long, our decisions applying the prohibition of cruel and unusual punishment in capital cases are of limited assistance in deciding the constitutionality of the punishment [in this instance].

*Solem,* 463 U.S. at 289, 103 S.Ct. at 3009, quoting *Rummel,* 445 U.S. at 272, 100 S.Ct. at 1138. Accordingly, the capital punishment cases neither mandate nor suggest that a mandatory nonparole life sentence after three violent felony convictions runs afoul of the Eighth Amendment.

### C. Due Process Claim

■ Finally, Durham challenges the standards under which the trial court found that Durham had a record of two convictions for armed robbery. The Habitual Offenders Act provides that the prosecution can prove prior convictions by merely presenting to the court certified court copies of the alleged convictions. Durham contends that the statute unconstitutionally relieves the prosecution of its burden of proving the prior convictions beyond a reasonable doubt. While Durham's challenge to the statute may have some merit, we uphold Durham's sentence because the prosecution at Durham's sentencing hearing did prove the pertinent facts beyond a reasonable doubt.

Under prevailing due process standards, we have some doubt whether a state court can, on the basis of a criminal record proven only by certified copies of court documents, constitutionally sentence to life imprisonment without parole an individual convicted of an offense for which the statutorily-prescribed maximum is a term of

years with the possibility of parole. Our doubts arise from *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), in which the Supreme Court upheld the Pennsylvania Mandatory Minimum Sentencing Act. The Pennsylvania Act mandated a minimum sentence of five years for an individual convicted of certain crimes if the prosecution proved by a preponderance of the evidence that the defendant "visibly possessed a firearm" during the commission of the crime. The Court stated that in some as-yet-undefined situations, due process may require the prosecution at sentencing to prove beyond a reasonable doubt facts not formally identified as an element of the offense. The Pennsylvania Act in the court's view did not present such a situation. A sentencing court may impose the Act's mandatory minimum even if the prosecution does not prove the possession of a firearm beyond a reasonable doubt because the prosecution retained the burden of proving the underlying offense beyond a reasonable doubt and more importantly, the minimum sentence did not exceed any sentence available in the absence of the Act. In short, the Act merely gave precise weight to a factor the court could normally consider in sentencing. *Id.* 106 S.Ct. at 2417–19.[1]

The Illinois Habitual Offenders Act does not share all of these characteristics. A sentence of life imprisonment without parole under the Act is significantly more severe than any sentence available to a judge in the absence of the Act. For example, the maximum sentence possible for Durham's offense, attempted murder, is thirty years. Ill.Rev.Stat. ch. 38, ¶¶ 8–4(c)(1), 1005–8–1(3) (1987). A finding that the defendant has a criminal record of two Class X felonies or murder within twenty years increases the sentence to mandatory life imprisonment without the possibility of parole, well above the thirty-year ceiling. *McMillan* suggests that due process may require the prosecution to prove the fact of the criminal record beyond a reasonable doubt before the sentencing judge can elevate the sentence pursuant to the Habitual Offenders Act.[2]

We need not expressly decide, however, whether due process so requires because, in Durham's case, the prosecution proved his criminal record beyond a reasonable doubt. In addition to the certified copies, Durham admitted his prior criminal record to the trier of fact by stipulating at trial to the two prior convictions for armed robbery. Tr. at 175. Based upon the certified copies and Durham's stipulation, the trial judge reasonably concluded beyond a reasonable doubt that Durham was convicted twice of armed robbery prior to his attempted murder conviction. By even the more rigorous reasonable doubt standard, then, the court sentenced Durham to life imprisonment without parole pursuant to the Illinois Habitual Offenders Act. Due process was satisfied.

## IV

### Conclusion

The prosecution presented sufficient evidence from which the trier of fact could find Durham guilty of attempted murder beyond a reasonable doubt. The Illinois Habitual Offenders Act as applied to Durham satisfies the Cruel and Unusual Pun-

---

1. Some circuits have interpreted *McMillan* to hold that the prosecution must prove beyond a reasonable doubt any fact that increases the punishment beyond the maximum available for other elements of the offense. *See, e.g., United States v. Brewer,* 841 F.2d 667, 1988 U.S.App. Lexis 2470 (6th Cir.1988); *United States v. Davis,* 801 F.2d 754 (5th Cir.1986) (vacating sentences set pursuant to the recidivist portion of the Armed Career Criminal Act, 18 U.S.C.App. § 1202, when the government did not prove to the trier of fact the defendant's prior convictions beyond a reasonable doubt). *But see United States v. Jackson,* 824 F.2d 21, (D.C.Cir.1987);

*United States v. Hawkins,* 811 F.2d 210 (3d Cir. 1987).

2. It may be that, despite the lenient standard of the Habitual Offenders Act, Illinois law requires the state to prove the prior convictions beyond a reasonable doubt by presenting evidence beyond the certified copies of conviction. The Appellate Court of Illinois for the Third Judicial District has so found. *People v. Mason,* 119 Ill.App.3d 516, 75 Ill.Dec. 43, 46–47, 456 N.E.2d 864, 867–68 (3d Dist.1983). *But see People v. McNeil,* 125 Ill.App.3d 876, 81 Ill.Dec. 256, 261, 466 N.E.2d 1058, 1063 (1st Dist.1984).

ishment Clause of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. Accordingly, the petition for writ of habeas corpus is denied. It is so ordered.