THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
VAUGHN WASHINGTON, Defendant-Appellant.

First District (4th Division)   No. 82—302

Opinion filed June 21, 1984.

110

Steven Clark and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Lawrence R. Stasica, and Peter M. Delongis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

In a bench trial, defendant, Vaughn Washington, appeals his convictions of murder and armed violence (Ill. Rev. Stat. 1979, ch. 38, pars. 9—1(a), 33A—2), and raises the following issues for review: (1) whether he was proved guilty of murder beyond a reasonable doubt; (2) whether attempted murder may be used as a predicate offense for a finding of habitual criminality; (3) whether the habitual criminal statute is unconstitutional; (4) whether the trial judge violated the habitual offender statute; and (5) whether the convictions and sentences

for armed violence and murder must be vacated.

Defendant was indicted for the following offenses: the murder of Rudy Jones, the attempted murder of Leroy Martin, a police officer, armed violence against Jones and Martin, and unlawful use of weapons.

At the bench trial, Al Law testified that on February 22, 1981, at 8:30 p.m., he was in a McDonald's restaurant at 35th and Wabash Avenue in Chicago, Illinois. Law was waiting to be served when he observed a man, whom he later identified as defendant, walk behind the counter and toward the drive-up window. The man wore a tan trench coat and a brown tweed hat. Law saw nothing in the man's hand. When Law next observed defendant, he was "scuffling" with the security guard. He never heard the two men say anything. Law heard two shots, turned around and saw the two men still wrestling. The security guard tried to draw his own weapon but defendant had his hand on the security guard's arm, forcing the gun back into its holster. The defendant pulled a gun from his trousers.

While running out of the restaurant, Law looked back and observed that the two men were still scuffling. The security guard was partially on the floor; only his head was visible above the counter. Law then saw defendant standing over the guard as though shooting down at him; there was a gun in defendant's hand. After Law heard another three shots fired, he no longer saw the security guard's head. From a gas station, Law telephoned the police who came immediately. Law saw defendant running down the street. When the officers exited their automobile, Law heard more gunshots. The officers had not drawn their weapons. Law saw defendant shoot at the officers three times; they returned the fire twice. Law went back into the restaurant and saw the guard lying behind the counter. During the struggle, Law never saw the security guard with a gun in his hand.

On cross-examination, Law was asked whether he heard shots during the struggle between defendant and the security guard. He answered in the affirmative. Then he was asked whether that was when he noticed the gun in defendant's hand. Law said that he saw defendant pull his gun earlier. Law also testified that he heard shots before the security guard drew his weapon. After Law ran out of the restaurant, he saw defendant standing over the security guard and firing down at him. During the incident, Law heard two shots and later three more shots.

In February 1981, Nolan Humphries was the manager of a McDonald's restaurant. He testified that on February 22, 1981, at about 8:30 p.m., he went to the McDonald's restaurant at 35th and Wabash

to return an item he had borrowed. While talking with the manager in the rear of the building, another employee informed them that a man was behind the counter. Humphries looked around, heard two shots and went to the front of the restaurant. He saw defendant struggling with someone. Humphries heard another shot and eventually ran out of the restaurant but returned when police arrived. He then heard at least two shots coming from the rear of the restaurant but did not see who was firing. When Humphries re-entered the restaurant, he saw the security guard. There was no weapon in his hand or in his holster. On cross-examination, Humphries stated he never saw a weapon in defendant's hand.

Vernita Fields, a McDonald's employee, was taking customer orders on February 22, 1981, at about 8:30 p.m. She turned around and saw a person in a beige coat and tweed hat "tussling" with the security guard who was in the drive-up window area. The man in the coat did not have a gun in his hand. She did not previously hear any loud words or argument. She heard a shot and fled to the basement, where she remained until police arrived. While in the basement, she heard two or three more shots.

Pamela Cureton, a Chicago police officer, was on patrol with her partner, Leroy Martin, in the vicinity of the McDonald's restaurant in the evening hours of February 22, 1981, when a citizen informed them of the incident in question. When the officers arrived at McDonald's, Cureton saw a man running through a parking lot. She did not see anything in his hands. Cureton and Martin shouted to the man to stop and identified themselves as police officers. The man turned around and fired at Martin who returned the fire. Cureton radioed for help. Martin and defendant exchanged gunfire a second time. When another police car approached, Martin knocked defendant to the ground.

Leroy Martin, a Chicago police officer, corroborated Cureton's testimony. However, he stated that defendant fired at him three times. When he apprehended defendant, the latter had a .38 caliber revolver. Defendant sustained gunshot wounds, but they were not caused by Martin's revolver.

The prosecution introduced a stipulation that the security guard who was killed was Rudy Jones, and then rested.

Defendant presented the following stipulations: a blood test taken on February 23, 1981, at 5:40 a.m., at Cook County Hospital revealed .27 milligrams of ethanol in defendant's blood; on February 22, 1981, defendant sustained two gunshot wounds, one in the right chest and another to the liver; three .38 caliber pellets were removed from the

body of Rudy Jones, one from the right chest and two from the right leg; two bullets were fired from a .38 caliber Taurus revolver and the third bullet was fired from a .38 caliber Smith and Wesson. The Taurus revolver was recovered by Officer Martin from defendant and was registered to Rudy Jones. The Smith and Wesson was recovered from the floor near the drive-up window of McDonald's and was unregistered. The defense then rested.

After closing arguments, the trial court found defendant guilty of murder and armed violence, and not guilty as to all other charges. Defendant was sentenced to a term of natural life. He appeals.

■ The first issue raised by this appeal is whether defendant was proved guilty of murder beyond a reasonable doubt. Defendant argues that the evidence in this case supports, at best, a finding of voluntary manslaughter. Defendant walked behind the counter of the restaurant, a struggle ensued between him and the security guard, and both men were shot. Two of the three bullets recovered from the victim's body were from his own gun. Defendant argues that this evidence supports an inference that he reasonably believed deadly force was necessary to prevent imminent death or great bodily harm to himself. No evidence suggests that he entered the restaurant for an unlawful purpose or that he was the aggressor in the incident. Evidence of mutual combat also supports a finding that defendant was guilty only of voluntary manslaughter because evidence of an altercation between the decedent and the accused prior to the acts causing death suggests that the homicide was committed under a sudden and intense passion resulting from serious provocation.

We reject defendant's argument. A reviewing court will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320.) In a bench trial, it is the province of the trial court to determine the credibility and weight of the testimony, to resolve the inconsistencies and conflicts therein, and to render its decision accordingly. The trial court, unlike the reviewing court, was in a position to observe the witnesses. (*People v. Berland* (1978), 74 Ill. 2d 286, 305-06, 385 N.E.2d 649, 658.) Applying these principles to the instant case, we hold that there was sufficient evidence to convict defendant of murder. Al Law testified that he saw defendant and the victim struggling; he heard shots before the security guard drew his weapon; and he saw defendant draw a weapon. Later, Law saw defendant standing over the victim as though firing down on him. Two other witnesses testified that they heard shots, one of whom saw the struggle. We cannot say that the evidence is so un-

satisfactory as to raise a reasonable doubt of guilt.

■■ Next, defendant argues that the finding of habitual criminality must be reversed. The habitual criminal statute provides in pertinent part as follows:

"(a) Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony or murder, and is thereafter convicted of a Class X felony or murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal.

\* \* \*

(e) Except when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to life imprisonment." (Ill. Rev. Stat. 1981, ch. 38, par. 33B—1.)

Defendant had previously been convicted of attempted murder and armed robbery. Defendant claims that attempted murder is not a Class X felony because the statute provides that the sentence for attempted murder "is the sentence for a Class X felony." (Ill. Rev. Stat. 1981, ch. 38, par. 8—4(c)(1).) Other Class X statutes provide that the offense "is a Class X felony." (See, for example, Ill. Rev. Stat. 1981, ch. 38, par. 11—1(c).) Defendant contends that the difference in language suggests that the legislature did not intend that attempted murder be treated as a Class X felony for all purposes. Alternatively, defendant argues that even if attempted murder is a Class X felony, under *ex post facto* principles, this court should consider the attempt statute at the time the offense was committed. Previously, attempted murder had the sentence for a Class 1 felony. Ill. Rev. Stat. 1975, ch. 38, par. 8—4(c)(1).

We reject defendant's argument. In a recent case, this court has held that attempted murder is a Class X felony. (*People v. Pagliuca* (1983), 119 Ill. App. 3d 906, 913, 458 N.E.2d 908, 914.) Therefore, we hold that the trial court properly invoked the habitual criminal statute where defendant had previously been convicted of attempted murder and armed robbery, both offenses now classified as Class X felonies.

■■ Defendant offers several arguments that the habitual criminal statute is unconstitutional. First, defendant claims that the statute does not provide adequate notice to a defendant that if he is convicted the prosecutor will seek a natural life sentence. The prosecutor may wait until the sentencing hearing before giving such notice. According to defendant, this deficiency in the statutory notice requirement and the lateness of notice violates the due process clauses of the United States and Illinois constitutions. Defendant contends that notice is re-

quired well in advance of the sentencing hearing so that the defendant's attorney will have time to challenge prior convictions so as to uncover any infirmity. Defendant also claims that by failing to require the State to prove beyond a reasonable doubt the existence of facts requiring the enhanced penalty, the habitual criminal statute violates the rule of *People v. Ostrand* (1966), 35 Ill. 2d 520, 221 N.E.2d 499, as modified in *People v. Hayes* (1981), 87 Ill. 2d 95, 429 N.E.2d 490.

We reject defendant's argument. The habitual criminal statute is concerned with sentencing. When defendant was charged with murder, he was put on notice that if convicted he would be subject to all possible penalties applicable to such a conviction. In *Oyler v. Boles* (1962), 368 U.S. 448, 452, 7 L. Ed. 2d 446, 450, 82 S. Ct. 501, 504, the Supreme Court held that due process does not require advance notice that the trial on the substantive offense will be followed by a habitual criminal proceeding, although a defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge. In the instant case, defendant had an adequate opportunity to prepare a possible defense to invocation of the habitual criminal statute. Defendant was found guilty of murder on December 15, 1981. The sentencing hearing was held on January 12, 1982. At the hearing, the trial court asked defendant's attorney whether he wanted to rebut the *prima facie* presumption of validity established by certified copies of defendant's prior convictions for armed robbery and attempted murder. The attorney stated that he had nothing to rebut the presumption. We hold that defendant waived his right to challenge the validity of his prior convictions. See *People v. Mason* (1983), 119 Ill. App. 3d 516, 522, 456 N.E.2d 864, 868.

We find inapposite *People v. Ostrand* (1966), 35 Ill. 2d 520, 221 N.E.2d 499, and *People v. Hayes* (1981), 87 Ill. 2d 95, 429 N.E.2d 490. In each of those cases, a misdemeanor offense was enhanced to a felony because of defendant's prior convictions. In the instant case, defendant was subject to an enhanced penalty because of prior convictions.

■ Defendant argues that the habitual criminal statute removes all of the sentencing authority traditionally reserved to judges and gives it to the prosecutor. The statute gives the prosecutor absolute discretion as to whom he wishes to sentence to life imprisonment, and gives the prosecutor no standards or other guidance in making this decision, allowing him, at his whim, to sentence one person to spend the rest of his life in prison while another serves only a term of years. The statute violates the separation of powers doctrine by taking the sentencing function from the judicial branch and giving it to the exec-

utive branch, by a legislative infringement of an exclusively judicial function, and by improperly delegating legislative power to the executive branch. Defendant contends that the habitual criminal statute should either be declared unconstitutional or construed as nonmandatory.

The issues of whether the habitual criminal statute is unconstitutional because it gives the prosecution unbridled discretion in deciding whether to seek the imposition of a life sentence and because it violates the separation of powers doctrine have been addressed in two recent cases, *People v. Mason* (1983), 119 Ill. App. 3d 516, 456 N.E.2d 864, and *People v. Withers* (1983), 115 Ill. App. 3d 1077, 450 N.E.2d 1323. In *Withers*, the court stated that the language in the habitual criminal statute "does not explicitly delegate to the State the power to choose which defendants shall be made subject to its terms. Rather, its provisions apply to 'every person' who meets its criteria. The word 'may' in section 33B—2(a) can be read as prescribing how the prosecutor brings to the court's attention a defendant's prior conviction history." (115 Ill. App. 3d 1077, 1088.) In *Mason*, the court concluded that the habitual criminal provision did not violate the separation of powers doctrine. Therefore, we conclude that the habitual criminal statute is not unconstitutional as granting unbridled discretion to the prosecutor or as violative of the separation of powers doctrine.

■ Next, defendant argues that the habitual criminal statute is unconstitutional because it requires the imposition of natural life imprisonment while forbidding consideration of personal characteristics and the seriousness of the offense, thus violating the Illinois Constitution, due process, and the eighth amendment to the United States Constitution. A similar argument was considered at length but rejected in *Withers*. Accordingly, we hold that the habitual criminal statute does not violate the Illinois Constitution, due process, nor the eighth amendment to the United States Constitution.

■ Defendant contends that the habitual criminal statute violates the United States and Illinois constitutional provisions regarding *ex post facto* laws and double jeopardy. He claims that under the statute, a defendant is punished not just for committing the third offense but for being a habitual criminal. Thus, he is necessarily being punished for the two earlier offenses which made up part of the finding of habitual criminality. Since this punishment was in part for offenses committed prior to the effective date of the habitual criminal statute, the *ex post facto* principle is violated. The double jeopardy provision is violated because defendant is being punished a second time for the first two offenses, which are alleged as part of the charge of habitual crim-

inality.

We again reject defendant's arguments. Recidivist statutes have been consistently upheld as not violative of *ex post facto* constitutional provisions. (*People v. Mason* (1983), 119 Ill. App. 3d 516, 524, 456 N.E.2d 864, 869.) Under the habitual criminal statute, defendant is not punished a second time for a prior offense; rather, prior adjudications are used to establish matters in aggravation to support the disposition authorized for a third serious offense. (*Cf. People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, 77-78, 413 N.E.2d 1269, 1274-75), construing the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 701—1 *et seq.*). Accordingly, we hold that the habitual criminal statute does not violate *ex post facto* and double jeopardy provisions of the Illinois and United States constitutions.

■ Defendant argues that he was denied his statutory and due process right to a hearing at which the State must prove defendant's prior convictions. He alleges that the trial judge failed to directly address and inform'him of his right to a habitual offender hearing and improperly allowed defense counsel to waive his right to a hearing even though counsel had not consulted with him. Defendant claims it was error to shift to him the burden of disputing the convictions.

Defendant's argument has no merit. When defendant was pronounced guilty, he was put on notice that a sentencing hearing would follow. As we stated above, defendant waived his right to challenge the validity of his prior convictions at the sentencing hearing. Moreover, at that hearing, defendant said that he "did all of those things in the past," thus admitting the validity of his past convictions. Therefore, we hold that defendant was not deprived of his right to a habitual offender hearing.

■ Finally, defendant argues that his convictions for armed violence and murder must be vacated under *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477, and *People v. Davis* (1981), 100 Ill. App. 3d 268, 426 N.E.2d 1047. The State argues that defendant was properly convicted of both offenses because the victim died of multiple gunshot wounds, thereby indicating that the offenses arose from a series of closely related or incidental acts and not from a single act as defendant contends.

In our opinion, under *Donaldson*, defendant's conviction for armed violence must be reversed. In *Donaldson*, our supreme court stated that the armed violence statute enhances the mandatory minimum sentence to be imposed upon conviction of a felony. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 169.) The legislature intended only to increase or enhance the minimum penalty upon conviction of a fel-

ony when the violator was in possession of a dangerous weapon while committing the felony. If it were its intention, the legislature could have expressly provided for separate convictions and sentences on charges of armed violence and its predicate or underlying felony. *People v. Donaldson* (1982), 91 Ill. 2d 164, 168.

In the instant case, armed violence is the underlying felony for the murder. However, defendant was sentenced under the habitual criminal statute to the maximum penalty possible, except for capital punishment; he was sentenced to a term of natural life. Thus, the purpose of the armed violence statute is not fulfilled in this case because defendant's penalty cannot be further enhanced. Therefore, we reverse defendant's conviction for armed violence.

For the foregoing reasons, the conviction for murder is affirmed, and the conviction for armed violence is reversed.

Affirmed in part and reversed in part.

LINN, P.J., and JIGANTI, J., concur.