**UNITED STATES ex rel. Sylvester ROBINSON, Petitioner,**

v.

**James A. CHRANS, Respondent.**

No. 86–2109.

United States District Court,
C.D. Illinois,
Danville Division.

May 5, 1987.

242

Sylvester Robinson, Pontiac, Ill., for respondent.

David E. Bindi, Asst. Atty. Gen., Chicago, Ill., for petitioner.

## ORDER

BAKER, Chief Judge.

The petitioner, currently incarcerated at the Pontiac Correctional Center, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. The respondent has submitted an answer in response to the petition for a writ of habeas corpus, and requests this court to deny the petition. The court construes this request as a motion for a judgment on the pleadings.

The petitioner was convicted of two counts of attempted murder, one count of armed robbery, and one count of unlawful use of weapons on April 11, 1983, in the Circuit Court of Cook County. The petitioner was adjudged a habitual criminal and sentenced to natural life imprisonment. On July 10, 1985, the Illinois Appellate Court confirmed his conviction and sentence. The Illinois Supreme Court, on February 5, 1986, denied leave to appeal. It appears that the petitioner has exhausted his available state court remedies.

In his petition for habeas relief, the petitioner raises essentially three issues. In ground one of his petition, the petitioner complains that ineffective assistance of counsel and improper tactics by the prosecutor deprived him of his due process rights. The court construes ground one as presenting two separate issues: ineffective assistance of counsel and prosecutorial misconduct. The third issue raised by the petitioner is the constitutionality of the Illinois Habitual Criminal Act under the Eighth and Fourteenth Amendments.

■ In ground two of his petition, Sylvester Robinson also complains that the Illinois Habitual Criminal Act violates the Illinois Constitution. This court is without jurisdiction to decide such an issue. *United States ex rel. Hoover v. Franzen*, 669 F.2d 433, 443 (7th Cir.1982).

The court finds, upon a thorough review of the record and the documents submitted for review, that the petitioner fails to present a claim meriting habeas relief. The petitioner's request for habeas corpus relief is therefore denied. This ruling is based upon the following findings.

## I. STATEMENT OF FACTS

In making its findings, the court has relied upon the factual summaries contained in the appellate court opinion, *People v. Sylvester Robinson. See Green v. Greer*, 667 F.2d 585 (7th Cir.1981). Those factual summaries are presumed to be correct. 28 U.S.C. § 2254(d); *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

The appellate court stated that the following facts have been determined.

At 3:00 a.m. on May 5, 1982, Albert Stiff stopped his semi-trailer truck near a closed gas station located at Harrison and Homan Streets in Chicago to use an outside pay telephone. After a man in a red T shirt approached Stiff and asked for a light, defendant, who was holding a sawed-off shotgun, stepped in front of Stiff and announced a robbery. Stiff testified that defendant was wearing a black leather jacket, blue jeans and a dark shirt. The first man took Stiff's watch, money clip containing $130, and a diamond ring. Defendant took a gold chain and a black orchid ring.

The men then walked Stiff to his truck and instructed him to get into his cab. Defendant tried to enter the truck on the passenger side, but could not do so. Defendant stood outside on the fuel tank and pointed his gun at Stiff. When a police squad car passed, defendant fell from the cab causing his gun to discharge. When the police officer returned, Stiff informed him that he had just been robbed. The officer drove in the direction of the fleeing defendant. After the officer returned, Stiff told him about the man in the red T shirt.

Officer James Bland testified that he had just passed the parked trailer truck when he saw defendant jump from the passenger side of the truck. The officer then heard an explosion when defendant hit the ground. Bland turned the squad car and saw defendant flee carrying a shotgun. After Stiff informed him that he had been robbed, Bland pursued defendant but lost sight of him. Bland radioed that he was chasing a black man about 5 feet 6 inches to 5 feet 8 inches in height, weighing 160 to 180 pounds, wearing a short black leather jacket, blue jeans, and a dark shirt. Bland gave the direction of defendant's flight and said that he was wanted for armed robbery. Bland cruised the area and apprehended two suspects, but Stiff stated that they were not the robbers. Officers McGaha and Bolling radioed that they had seen defendant and that he had shot at each of them. When Bland returned to his squad car, he saw defendant whom he and another officer chased on foot. After defendant was ordered to stop, he turned and aimed his shotgun. Bland fired at defendant, and defendant flinched. Bland fired a second shot and defendant stumbled backward. Officer Bolling approached defendant, placed his foot on the shotgun which was still strapped to defendant's shoulder, then picked up the gun. While Bolling searched defendant, Bland unloaded the shotgun.

On April 11, 1983, in the Circuit Court of Cook County, following a jury trial, the petitioner was convicted of armed robbery, two counts of attempted murder, and unlawful use of a weapon. He was found to be a habitual criminal and was sentenced to a term of natural life in prison. The Illinois Appellate Court, on July 10, 1985, affirmed the convictions and sentence. On February 5, 1986, the Illinois Supreme Court denied leave to appeal.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that he was denied the benefit of effective assistance of counsel. Specifically, the petitioner complains that his trial attorney did not file a discovery motion; that while the State's answer to discovery is a part of the trial court record, R. 485, it is unclear that the defense attorney ever received or studied that document; that his defense attorney made no request for an update of the State's discovery; that the defense attorney lacked in pretrial preparation, had no clearcut theory of the case and was, in effect, improvising as he went along; that the defense attorney summoned Joseph Nichols, a firearms expert, at the last minute, and allowed Nichols to give damaging testimony; that defense counsel did not object to the State's motion to add Willa Booker as a witness; and that the defense counsel did not object to the State's Attorney's closing argument.

 In order to establish a claim of ineffective assistance of counsel, the defendant must first establish that counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). This requires showing that counsel made errors so serious that he was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. *Id.* Second, the defendant must establish that the deficient performance prejudiced his defense. Counsel's errors must have been so serious as to deprive the defendant of a fair trial. *Id.* In sum, "the benchmark for judging any claim for ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having

produced a just result." *Id.* at 686, 104 S.Ct. at 2064. The petitioner bears the burden of proof as to both components. *Id.* at 687, 104 S.Ct. at 2064.

The petitioner has not shown that his counsel's performance was deficient. The record reflects that the petitioner's counsel was prepared and performed well in his defense of the petitioner's case. It is not, however, necessary to rule definitively on the question of counsel's performance in this case. For even if counsel's performance could be deemed deficient, which it was not, the petitioner has not shown that he was prejudiced by the alleged deficient performance. As noted above, in order to establish a Sixth Amendment inefficient counsel claim, a petitioner must show both a deficient performance and prejudice. The Supreme Court noted in *Strickland* that a district court may determine prejudice before determining performance.

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Id.* at 697, 104 S.Ct. at 2064; *see also United States ex rel. Cross v. DeRobertis,* 811 F.2d 1008, 1013 (7th Cir.1987).

In order to establish prejudice, the petitioner must show that there is a reasonable probability that absent the alleged errors of counsel, the factfinder would have had a reasonable doubt respecting guilt. *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068; *Cross,* 811 F.2d at 1015. No such showing is made here. Had defense counsel done things differently, if he had corrected his alleged deficiencies, there is no reasonable probability that the result would have been different. The evidence convicting Robinson was overwhelming. *See* Statement of Facts, supra. The standard to show ineffective assistance of counsel is quite rigorous; the petitioner has not

met that standard. Petitioner's complaints that he was denied effective assistance of counsel are without substance.

## III. PROSECUTORIAL MISCONDUCT

The petitioner raises numerous instances of allegedly improper argument on the part of the prosecutors: the prosecutors constantly stated that the petitioner, in their opinion, was guilty; the prosecutors referred to the "ridiculous" nature of the defense theory of the case; the prosecutors improperly commented on the veracity and credibility of the State's witnesses; the prosecutors touted the "excellent" police work by veteran officers in the "finest police department in the country"; the prosecutors argued the facts incorrectly; and the prosecutors argued the speculative nature of the harm that the victim was exposed to. The petitioner argues that these remarks were improper, prejudiced the petitioner, and denied him a fair trial.

The standard for determining whether prosecutorial comments during closing argument violated a defendant's due process rights was set forth by the Supreme Court in *Darden v. Wainwright,* — U.S. —, —, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (U.S.1986):

> [I]t "is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright,* 699 F.2d 1031, 1036 (CA11 1983). The relevant question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637 [94 S.Ct. 1868, 40 L.Ed.2d 431] (1974).

The petitioner cites to many instances of impropriety, most of which have been taken out of context. A review of the record fails to show any statement or combination of statements which so infected the trial with unfairness as to make the resulting conviction of Sylvester Robinson a denial of due process. The prosecutors did not misstate the evidence, nor were their remarks prejudicial or inflammatory. The petitioner's allegations of impropriety,

whether standing alone or together, simply do not amount to prosecutorial misconduct.

## IV. ILLINOIS HABITUAL CRIMINAL STATUTE

The petitioner argues that the Illinois Habitual Criminal Act, Ill.Rev.Stat. ch. 38, ¶ 33B–1, under which he was sentenced, is unconstitutional under the Eighth and Fourteenth Amendments of the United States Constitution. In particular, the petitioner challenges the statute because it gives the prosecutor the discretion to decide which defendants will be sentenced under the Act and it does not allow for the consideration of mitigating factors.

The court notes at the outset the difficulty the petitioner faces in challenging the constitutionality of the Habitual Criminal Act. In *Spencer v. Texas*, 385 U.S. 554, 559, 87 S.Ct. 648, 651, 17 L.Ed.2d 606 (1967), a case concerning the application of a recidivist statute, the Supreme Court stated, "No claim is made here that recidivist statutes are themselves unconstitutional, nor could there be under our cases. Such statutes and other enhanced-sentence laws, and procedures to implement their underlying policies have been enacted in all the States, and by the Federal Government as well." (Footnotes omitted.) Recidivist statutes and other enhanced-sentence laws have been upheld by the Court over objections that they violate constitutional strictures dealing with double jeopardy, *ex post facto* laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities. *See Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *Gryger v. Burke*, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948); *Graham v. West Virginia*, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912); *McDonald v. Massachusetts*, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901); *Moore v. Missouri*, 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301 (1895).

The petitioner challenges the constitutionality of Illinois Revised Statute ch. 38, ¶ 33B–1 which provides that:

(a) Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a class X felony or murder, and is thereafter convicted of a class X felony or murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal.

\* \* \* \* \* \*

(e) Except when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to life imprisonment.

While this appears to be the first time this particular provision of the Illinois Act has been challenged in the federal courts, the Illinois courts have repeatedly upheld the constitutionality of the Act over objections similar to those raised here. *See People v. Hartfield*, 137 Ill.App.3d 679, 92 Ill.Dec. 281, 484 N.E.2d 1136 (1st Dist. 1985); *People v. Coleman*, 128 Ill.App.3d 538, 83 Ill.Dec. 857, 470 N.E.2d 1277 (5th Dist.1984); *People v. Tobias*, 125 Ill.App.3d 234, 80 Ill.Dec. 496, 465 N.E.2d 608 (1st Dist.1984); *People v. Washington*, 125 Ill. App.3d 109, 80 Ill.Dec. 554, 465 N.E.2d 666 (1st Dist.1984); *People v. Mason*, 119 Ill. App.3d 516, 75 Ill.Dec. 43, 456 N.E.2d 864 (3d Dist.1983); *People v. Withers*, 115 Ill. App.3d 1077, 71 Ill.Dec. 444, 450 N.E.2d 1323 (1st Dist.1983), *cert. denied*, 465 U.S. 1052, 104 S.Ct. 1332, 79 L.Ed.2d 726.

The petitioner first argues that the Illinois statute is unconstitutional because it gives the prosecutor the discretion to decide which defendants will be sentenced under the Act. The petitioner's argument, however, ignores the interpretation afforded the statute by the Illinois courts. In *People v. Withers*, 115 Ill. App.3d at 1088, 71 Ill.Dec. 444, 450 N.E.2d 1323, the Illinois Appellate Court stated, "the statute does not explicitly delegate to the State the power to choose which defendants shall be made subject to its terms. Rather, its provisions apply to 'every person' who meets its criteria." *See also Peo-*

*ple v. Coleman*, 128 Ill.App.3d at 880–881, 83 Ill.Dec. 857, 470 N.E.2d 1277; *People v. Tobias*, 125 Ill.App.3d at 240–241, 80 Ill. Dec. 496, 465 N.E.2d 608; *People v. Washington*, 125 Ill.App.3d at 115, 80 Ill.Dec. 554, 465 N.E.2d 666; *People v. Mason*, 119 Ill.App.3d at 522–523, 75 Ill.Dec. 43, 456 N.E.2d 864. The only discretion allowed the prosecutor is the manner in which the defendant's prior conviction history is brought to the attention of the court. *People v. Withers*, 115 Ill.App.3d at 1088, 71 Ill.Dec. 444, 450 N.E.2d 1323. The interpretation of a state statute by a state appellate court is generally accepted by a federal court and will not be disturbed unless the court is convinced that the state supreme court would decide the issue differently. *In Re Air Crash Disaster Near Chicago, Illinois, on May 15, 1979*, 771 F.2d 338, 339 (7th Cir.1985). *See also Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). There is nothing present in the case at hand to convince the court that the Illinois Supreme Court would interpret the Habitual Criminal Statute in a manner inconsistent with the Illinois Appellate courts' interpretation. In light of the *Withers* interpretation, the petitioner's claim must fail in that the prosecutor does not have the discretion to decide which defendants will be sentenced under the Act.

Finally, the petitioner argues that the Illinois Habitual Criminal Act is unconstitutional because it does not allow for the consideration of mitigating factors. Under the Illinois statutory scheme, once a defendant is adjudged an habitual criminal, he or she is sentenced to life imprisonment. *See* Ill.Rev.Stat. ch. 38, ¶ 33B–1(e). However, in order to be adjudged an habitual criminal, the defendant must have been thrice convicted of a Class X felony. The first two adjudications afford the defendant the opportunity to present mitigating evidence. Upon the third Class X felony conviction, the presence of any mitigating factor is outweighed by society's interest in being protected from criminal conduct. *See Rummel v. Estelle*, 445 U.S. at 284–285, 100 S.Ct. at 1144–45; *People v. Withers*, 115 Ill.App.3d at 1090–1091, 71 Ill.Dec.

444, 450 N.E.2d 1323. *See also People v. Hartfield*, 137 Ill.App.3d at 691, 92 Ill.Dec. 281, 484 N.E.2d 1136; *People v. Coleman*, 128 Ill.App.3d at 881–882, 83 Ill.Dec. 857, 470 N.E.2d 1277; *People v. Tobias*, 125 Ill.App.3d at 240–241, 80 Ill.Dec. 496, 465 N.E.2d 608; *People v. Washington*, 125 Ill.App.3d at 116, 80 Ill.Dec. 554, 465 N.E.2d 666; *People v. Mason*, 119 Ill. App.3d at 523, 75 Ill.Dec. 43, 456 N.E.2d 864.

In *Rummel,* the Supreme Court, in upholding a mandatory life sentence over Eighth and Fourteenth Amendment objections, stated:

> The purpose of a recidivist statute … is not to simplify the task of prosecutors, judges, or juries. Its primary goals are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes.... [T]he point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.

*Rummel,* 445 U.S. at 284–285, 100 S.Ct. at 1144–45.

■ In enacting the Habitual Criminal Act, the Illinois legislature has determined that, at least in Illinois, "the point at which a recidivist will be deemed to have demonstrated the necessary propensities," is upon the third Class X felony conviction. At that point the societal interest in protecting itself from criminal conduct is foremost; the consideration of mitigating factors becomes irrelevant. This legislative determination is constitutionally permissible. *See Rummel,* 445 U.S. at 263, 100 S.Ct. at 1133. The petitioner's claim that the Illinois Criminal Habitual Act is unconstitu-

tional because it does not allow for the consideration of mitigating factors is meritless.

IT IS THEREFORE ORDERED that the petition for writ of habeas corpus is denied. The Clerk is directed to enter judgment accordingly.