**David WILLIAMS and Robert Hicks, Petitioners–Appellants,**

v.

**James A. CHRANS, Respondent–Appellee.**

**Nos. 88–3498, 89–1561.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 30, 1989.

Decided Feb. 5, 1990.

Rehearing and Rehearing In Banc Denied March 19, 1990.

David Williams, Oakdale, La., pro se.

Sally L. Dilgart, Asst. Atty. Gen. (argued), Chicago, Ill., for respondent-appellee.

Before CUDAHY, EASTERBROOK and MANION, Circuit Judges.

CUDAHY, Circuit Judge.

David Williams and Robert Hicks appeal from the denial of their habeas corpus petitions. They seek relief from their Illinois state court convictions for armed robbery, which were upheld on direct appeal. *People v. Williams*, (Ill.App. 1st Dist.1985) [135 Ill.App.3d 1162, 100 Ill.Dec. 211, 496 N.E.2d 1276 (table)]. In support of their petitions, they assert they were denied a fair trial because of a confrontation clause violation, improper admission of the victim's testimony identifying them as the culprits, prejudicial statements by the prosecutor during closing argument and ineffective assistance of counsel. Williams additionally charges that the Illinois Habitual Criminal Statute, under which he was sentenced to life in prison without parole, was applied to him in violation of the Eighth and Fourteenth Amendments and that he was denied his right under Illinois statute to a speedy trial. We affirm.

## I. Factual Background

On April 6, 1983, the victim of the armed robbery, Zois Lazarus, was opening his Chicago grocery store at about 7:00 a.m. His assistant, Robert Davis, arrived at the store, but soon thereafter went out for coffee. Meanwhile, two men entered the store and pretended to shop. Davis returned to the store, passed the men and went to the back room to clean up. The men then approached Lazarus, brandished a knife and held him up. They removed $1,000 in twenty-dollar bills from his rear pocket, yet never touched the cash register. Lazarus also suffered two knife wounds to

his face. During the attack, Lazarus called out to Davis for help, but Davis did not appear. Lazarus, who testified through a translator, stated that he had seen the men who robbed him before he was knocked to the floor on his stomach. He stated that both men were black, one short, one taller, about 25 to 30 years old, and that the shorter one held the knife.

The incident was immediately reported to the police, and Officer Bendel soon arrived at the scene to investigate the crime. According to Officer Bendel, Robert Davis stated that he had recognized the robbers. Davis rode in Bendel's car, directing the officer to both Williams' and Hicks' residences, where each of the appellants was identified by Davis and arrested by Bendel. Officer Bendel obtained permission from Hicks' girlfriend and roommate, Robbie Gray, to search their apartment, where he discovered $200 in cash, mostly in twenties.

## II. Confrontation Clause

After identifying Williams and Hicks and appearing at police headquarters later that day, Davis apparently disappeared and could not be located for further questioning or testimony, despite numerous efforts by the state to contact him and procure his presence at trial. The appellants complain that they suffered a confrontation clause violation when Officer Bendel was improperly permitted to testify at trial as to Robert Davis' identifications of them as the perpetrators of the robbery.

The appellants rest their confrontation clause claim on the following colloquy which occurred during Officer Bendel's testimony at trial:

Q: Pursuant to this conversation with Robert Davis, you went where, Officer?
A: 5832 West End.

.        .        .        .        .

Q: When you got to that address who were you looking for?
A: A man named Leo.
Q: When you arrived at that address what did you do?
A: We went up to the door, were met by a female occupant who let us in and

we asked if Leo was there. She said yes, she called for Leo and the gentleman over there came out, David Williams (indicating).

.        .        .        .        .

Q: When David Williams came out, Officer, what happened?
A: We explained why we were there, that he was named as one of the offenders by Robert Davis in an armed robbery that had occurred on Madison, and we placed him under arrest.
Q: And where did you take him then?
A: We took him out to a wagon and he was identified by Robert Davis as one of the offenders.
Mr. Thomas Laz [defense counsel]: Objection. Move to strike it.
The Court: Sustained.
Mr. Thomas Laz: I ask that the jury be instructed to disregard that.
The Court: The jury will disregard what Mr. Davis said.

R. at 384–85. A similar exchange took place when Officer Bendel testified concerning the circumstances of Hicks' arrest. R. at 387. Once again, the hearsay testimony regarding Davis' identification was objected to, the objection sustained, the statement stricken and the jury instructed to disregard it.

The Appellate Court of Illinois held that under Illinois evidence law, the prosecution is permitted to offer "some explanation as to why or how a previously unidentified defendant came to be charged with the crime." *People v. Williams*, slip op. at 4 (citing *People v. Johnson*, 94 Ill.App.3d 200, 210, 49 Ill.Dec. 748, 756, 418 N.E.2d 768, 776 (1st Dist.1980)). Therefore, the court concluded, Officer Bendel was properly permitted to testify that he had had a conversation with Davis, that Davis then accompanied him to the appellants' residences and that Bendel arrested the appellants. Indeed, Williams and Hicks conceded as much before the district court. *United States ex rel. Williams v. Chrans*, No. 86 C 3367, mem. op. at 5, 1988 WL 128680 (N.D.Ill. Nov. 21, 1988). We will not disturb a state court's determination that its evidence rules allow such testimony

unless we are convinced that the evidentiary error was so severe as to amount to a constitutional violation; we are concerned solely with the question whether Officer Bendel's testimony concerning Robert Davis violated the appellants' Sixth Amendment right to confront witnesses against them. *See Nelson v. Farrey,* 874 F.2d 1222, 1226 (7th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 835, 107 L.Ed.2d 831 (1990); *Dudley v. Duckworth,* 854 F.2d 967 (7th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989).

Williams and Hicks, in support of their argument that Officer Bendel's entire testimony concerning Robert Davis violated the confrontation clause, cite this court's decisions in *United States v. Keplinger,* 776 F.2d 678, 695 (7th Cir.1985), *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986), and *United States v. Mancillas,* 580 F.2d 1301, 1309–10 (7th Cir.), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978). These cases, however, are of little help. In both *Keplinger* and *Mancillas,* the challenged evidence was admitted in its entirety, unlimited by any court instruction to the jury. In neither of those cases, moreover, did we deem the admitted testimony to be so harmful as to require a new trial.

In the present case, by contrast, the trial court upheld each of defense counsel's objections to Officer Bendel's statements that Davis had identified Williams and Hicks as the robbers. Not only were these declarations excluded, but the judge also instructed the jury to disregard what Davis had allegedly said to Officer Bendel. Both the Illinois Appellate Court and the district court ruled that the court's prompt instruction cured any error caused by the hearsay testimony. The Supreme Court has recently stated: "We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, ... and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *Greer v. Miller,* 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987) (citations omitted); *see also United States v. Gaddis,* 877 F.2d 605, 611 (7th Cir.1989).[1]

Williams and Hicks urge us to find that Officer Bendel's testimony regarding Davis' identification of them could not have been cured by the court's instruction because Lazarus' identification was shaky and was further impeached by the alibi testimony of Robbie Gray. We agree, however, with the two courts that have previously reviewed this case that any error caused by Officer Bendel's hearsay testimony was harmless. Lazarus positively identified Williams and Hicks, having viewed them in broad daylight for at least several moments prior to the robbery; any discrepancies between the actual physical characteristics of the appellants and Lazarus' earlier descriptions of his robbers simply presented a question of the *weight* to be given Lazarus' identification testimony, but did not render that testimony so incredible that no rational jury could believe it. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Greider v. Duckworth,* 701 F.2d 1228, 1231–32 (7th Cir.1983).

Further, we find it entirely likely that any harm done to the appellants' case by the mention of Davis' identification of them occurred at least to some extent because of their own counsel's insistence on raising that issue during closing argument. *See* R. at 432–36. Thus, we cannot grant the appellants relief on the basis of the confrontation clause.

---

1. Williams and Hicks also assert that Officer Bendel's hearsay testimony regarding Davis' identifications created a problem similar to that considered in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). They argue that no limiting instruction could have cured the repeated mention of the identifications. Because appellants raised this issue for the first time during oral argument before this court and have not shown cause for and prejudice from their failure to present the claim earlier, they have waived review of this question. *Sotelo v. Indiana State Prison,* 850 F.2d 1244, 1252 (7th Cir.1988).

### III. The Victim's Identification of Williams and Hicks

■ As part of their confrontation clause challenge to their convictions, Williams and Hicks apparently assert two bases of objection to Lazarus' testimony that he had earlier identified the two defendants as his robbers. First, Williams and Hicks complain that the jury was misinformed as to the number of times that Lazarus had identified the appellants. At oral argument, we questioned appellants' counsel about this matter, and without subsequent rebuttal by the state, we were told that Lazarus had identified the two defendants only twice—once in a police line-up on the day of the robbery and a second time during his trial testimony. In response to leading questions by the state, however, Lazarus testified that he had spoken with the prosecutors *three* times, and each time he had identified Williams and Hicks. R. at 376–77. This error was repeated during closing argument when the prosecutor stated that Lazarus "told you [the jury] that he came to court three times and each of the times he identified both of these Defendants as the people who robbed him and cut him with that knife." R. at 427. Apparently, Williams and Hicks believe that these misstatements constitute grounds for reversal. The record shows, however, that defense counsel did not object to either of these inaccurate statements. Nor was this claim of error raised before the Illinois Appellate Court or the district court. In the absence of a showing of cause for and prejudice from this omission, the issue is waived, and we will not consider it. *See Sotelo v. Indiana State Prison*, 850 F.2d 1244, 1252 (7th Cir.1988).

■ As a second basis for their challenge to Lazarus' identification testimony, Williams and Hicks appear to state an objection on due process grounds to the admission of the earlier identification. Although the trial court had found the police line-up in which Lazarus first identified *Hicks* to be unduly suggestive, R. at 146,[2]

the court additionally found that Lazarus' ability to identify Hicks was grounded on a sufficiently independent and reliable basis. The court therefore refused to suppress Lazarus' in-court identification of Hicks. R. at 175–76. We will not disturb the trial court's findings of fact as to the reliability of Lazarus' in-court identification of Hicks because the court conducted a full and fair hearing on the matter, and sufficient evidence supports its findings. 28 U.S.C. § 2254(d).

During direct examination, Lazarus stated that he had identified both Williams and Hicks in a police line-up. R. at 344–45. But defense counsel did not object to this mention of the suppressed line-up identification of Hicks. Further, it appears that the particular argument about an improper reference to the line-up identification of Hicks was not made to the Illinois Appellate Court; that court ruled only that Lazarus' uncorroborated identification of the two defendants was sufficiently credible to sustain the convictions. *People v. Williams*, slip op. at 5. In the district court, Hicks apparently switched tracks and argued that the admission of Lazarus' line-up identification of him violated his due process rights. That claim was rejected, however, because Hicks had not preserved it in his direct appeal. *United States ex rel. Williams v. Chrans*, mem. op. at 7. It is not clear whether Hicks bases his claim in this court on due process grounds or mere error. In any event, we do not believe that Hicks has succeeded in reviving this issue for our review by including it with tenuously related matters within the "confrontation clause" point. Consequently, this claim, too, has been waived, and Hicks has failed to excuse his waiver by a showing of cause and prejudice. *See Sotelo*, 850 F.2d at 1252. We therefore decline to review this issue.

### IV. Prejudicial Statements During Closing Argument

Williams and Hicks allege that "a pattern of prejudicial and unsubstantiated

---

**2.** The trial court did not, however, find the line-up in which Lazarus initially identified *Williams* to be unduly suggestive. R. at 143. Since that identification was proper, we certainly cannot conclude that the trial judge erred in permitting Lazarus to testify as to his pretrial identification of *Williams*.

statements" made by the prosecutor during her closing argument deprived them of a fair trial. Appellants' Brief at 34. However, the appellants ask us to review the record with respect only to the state's references to Hicks' alibi witness—his live-in girlfriend Robbie Gray.

Gray testified at trial that Hicks was at home with her during the time when the robbery was committed and that he had accompanied her at about 9:30 a.m. on a trip to Catholic Charities in Des Plaines to visit their child. R. at 402–03. During closing arguments, the parties disputed the weight to be accorded Gray's alibi testimony. The appellants contend that the state went too far in its efforts to minimize Gray's credibility when the prosecutor stated: "This is the first time we hear about her, the alibi of Robert Hicks in court." R. at 457. Defense counsel objected that this declaration was not true, but the trial judge said: "This is argument, if it is contrary to the evidence the jury will disregard it." *Id.* According to Hicks' brief in this court, defense counsel notified the state some two months before trial that Robbie Gray would testify as an alibi witness for Hicks. For its part, the state argues that its comments were proper, since Gray, who was present at Hicks' arrest, did not immediately come forward to serve as Hicks' alibi, but rather waited four months.

■■■■ The Illinois Appellate Court considered the issue waived because "defendants' post-trial motion does not set forth the remarks asserted to be prejudicial." *People v. Williams*, slip op. at 6. Despite the fact that defense counsel had objected to the alibi argument, the appellate court ruled that Illinois law requires a specific allegation of error in the post-trial motion. *Id.* (citing *People v. Thomas*, 116 Ill.App.3d 216, 220–21, 72 Ill.Dec. 145, 148–49, 452 N.E.2d 77, 80–81 (1st Dist.1983)). When a state court relies explicitly on a state procedural default rule in declining to review a federal question, a federal court sitting in

habeas corpus jurisdiction must accept that determination as an "adequate and independent state ground" for decision of the issue. *Harris v. Reed*, —— U.S. ——, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Absent a showing of cause for and prejudice from the default or a demonstration that failure to consider the federal claim would result in a "fundamental miscarriage of justice," we may not consider a procedurally defaulted issue. *Murray v. Carrier*, 477 U.S. 478, 485, 495, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986).

■■■ Even if Hicks had adequately preserved the issue, we would nevertheless decline to grant him habeas relief on the basis of this claim. The Illinois Appellate Court determined that the prosecutor's comments about Gray's delayed emergence as an alibi were proper and could not be considered plain error. *People v. Williams*, slip op. at 7 (citing *People v. Kester*, 78 Ill.App.3d 902, 909, 34 Ill.Dec. 216, 221, 397 N.E.2d 888, 893 (3d Dist. 1979)).[3] We agree that any error committed by the trial court in permitting the state to comment incorrectly that Gray had come forward as an alibi for the first time at trial did not affect Hicks' substantial rights and was, therefore, harmless. We do not believe that this single comment could have so influenced the jury as to deprive Williams and Hicks of a fair trial. "The Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). In our view, Williams and Hicks received a fair trial; the state's comments at closing argument are an inadequate basis for habeas relief.

## V. Ineffective Assistance of Counsel

The appellants assert a variety of grounds in support of their charge that they suffered ineffective assistance of counsel at their trial. Williams and Hicks attack their trial counsel's competence

---

**3.** As a prerequisite to an Illinois appellate court's exercise of its discretionary authority to notice an otherwise unpreserved claim of error, the court must find that the error or defect "affect[s] substantial rights...." Ill.Rev.Stat. ch. 110A, ¶ 615(a).

most vigorously for his allegedly ineffective cross-examination of Lazarus. In addition, the appellants base their claim on counsel's failure to preserve their challenge to the state's closing argument, to challenge Lazarus' line-up identification of Hicks and to object to certain incorrect statements made by the prosecution.

■■ When resolving a claim of ineffective assistance of counsel, we follow the two-pronged inquiry of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* a criminal defendant must demonstrate first, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and second, that the defendant was so prejudiced by counsel's deficiency as to cast doubt on the reliability of the trial's outcome. *Id.* at 687, 104 S.Ct. at 2064. We are mindful that the Constitution requires "reasonably effective assistance of counsel" judged by an objective standard, *id.* at 687–88, 104 S.Ct. at 2064–65, and that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. at 2065. We, of course, may not find counsel ineffective if the criminal defendant is unable to overcome the presumption that counsel's challenged actions fell within the broad range of sound trial strategy. *Id.* Further, in order to establish their right to relief under this claim, Williams and Hicks must show that counsel's errors directly affected the jury's verdict. In other words, counsel's errors must not have been merely harmless.

■ Williams and Hicks have failed to overcome the presumption that their counsel's actions rested within the domain of acceptable trial strategy. The appellants essentially complain, with the advantage of hindsight, that counsel did not probe deeply enough into the discrepancies between Lazarus' initial description of his assailants and Williams' and Hicks' actual physical characteristics. But, as the state points out, defense counsel extensively cross-examined Lazarus on his ability to observe his attackers prior to and during the crime and the discrepancies between his description of the robbers and Williams' and Hicks' physical appearances. R. at 355–72. Further, counsel devoted more than half of his closing argument to challenging the accuracy of Lazarus' identification of his clients as the robbers. R. at 435–36, 438–48. We cannot say that counsel handled this crucial question ineffectively.

■ We also refuse to consider counsel incompetent for not stressing the unreliability of Lazarus' identification of Hicks in the police line-up. Indeed, such a tactic might well have undermined counsel's strategy in attacking the reliability of Lazarus' in-court identification by calling the jury's attention to the fact that Lazarus had previously identified Williams and Hicks. Such a tactic could have been quite detrimental, since the first identification occurred on the same day as the robbery when the culprits' features were fresh in the victim's mind. In any event, it would indeed be odd to declare defense counsel incompetent for failing to emphasize an identification that had been suppressed by the trial court as unduly suggestive. Counsel's approach in this area comported fully with objective standards of sound trial strategy.

■ We do agree with the appellants that counsel's inexcusable failure to specify the alleged incidents of prosecutorial misconduct in the post-trial motion cannot be considered "sound trial strategy." However, Williams and Hicks have failed to demonstrate actual prejudice from their trial counsel's lapse. Having already concluded that the prosecution's inaccurate statement regarding Gray's alibi testimony for her boyfriend was at most harmless error, *supra,* we obviously cannot make the contradictory finding that defense counsel's failure to preserve the issue for review resulted in "actual prejudice" to the defendants. Similarly, the trial's outcome was not prejudiced by counsel's failure to object to the prosecutor's comment during closing argument that Lazarus could not have seen that Hicks' hair was gray because Hicks wore a hat during the robbery—a fact not in evidence—or by counsel's failure to challenge the inaccurate ref-

erences to Lazarus' "three" prior "in-court" identifications. Any error resulting from these failures would have been cured by the trial judge's admonition to the jury during closing argument to disregard statements contrary to the evidence.

We conclude, therefore, that Williams and Hicks have not satisfied both prongs of the *Strickland* test on any of their challenges to their trial counsel's competence. Relief on this ground is consequently denied.

## VI. Application of Illinois Habitual Criminal Statute to Williams

The next question is whether the application of the Illinois Habitual Criminal Statute, Ill.Rev.Stat. ch. 38, § 33B–1, to appellant Williams violated the Eighth and Fourteenth Amendments.[4] Williams had twice been convicted of armed robbery prior to his conviction in this case, and he concedes that he is therefore subject to the statute's terms. The first two convictions were entered before the effective date of the Habitual Criminal Act. However, Williams has abandoned his earlier challenges to the statute on *ex post facto* grounds, since that argument has been firmly rejected by both state and federal courts. *See People v. Williams*, slip op. at 8 (collecting Illinois appellate decisions); *United States ex rel. Robinson v. Chrans*, 660 F.Supp. 241, 245–47 (C.D.Ill.1987) (cited in *United States ex rel. Williams v. Chrans*, mem. op. at 10). The district court correctly rejected both Williams' Eighth Amendment and *ex post facto* challenges to the statute.

■ Williams contends before this court "that any life sentence without parole where the crimes occurred before the [e]ffective date of the recidivist law makes the imposition of life sentence without pa-

role to be significantly disproportionate." Appellants' Brief at 44. In our view, this line of argument simply restates an *ex post facto* claim, which, as we have already noted, Williams has dropped in light of abundant adverse judicial decisions on the question. Consequently, we will not revisit this barren field.

Even if we could consider Williams' disproportionality argument to be a genuine Eighth Amendment claim, rather than a thinly veiled *ex post facto* challenge, we would nevertheless uphold the application of the Habitual Criminal Statute to him. Williams may well be correct in asserting that the Supreme Court was substantially influenced by the availability of parole when it decided in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), to affirm the application of Texas' recidivist statute to a man who had committed forgery and theft on three occasions in a combined amount of less than $300. But that interpretation of *Rummel* offers Williams no comfort. Williams is hardly in the same class of criminals as the petitioner in *Rummel;* he has been convicted three times of armed robbery, a violent criminal offense. The Illinois legislature could rationally conclude that a person who has committed three crimes of violence against another person has demonstrated either an unwillingness or an inability to reform. Consequently, we cannot say that the Illinois Habitual Criminal Statute results in a sentence "grossly disproportionate to the severity of" Williams' crime. *Rummel*, 445 U.S. at 272, 100 S.Ct. at 1138.

## VII. The Illinois Speedy Trial Act

■ In his pro se appeal to this court, Williams raises one additional claim for habeas corpus relief.[5] He asserts that he

---

**4.** The statute provides in pertinent part:
  (a) Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony ... and is thereafter convicted of a Class X felony ... committed after the 2 prior convictions, shall be adjudged an habitual criminal. ...

  .    .    .    .    .

  (e) Except when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to life imprisonment.
  Ill.Rev.Stat. ch. 38, §§ 33B–1(a), (e).

**5.** In addition to the confrontation clause issue, which we have treated *supra*, Williams' pro se brief also challenges the sufficiency of the evidence against him on due process grounds. This claim was not, however, presented to the Illinois Appellate Court or the district court.

was denied his statutory right to a trial within 120 days of being taken into the state's custody "unless delay is occasioned by the defendant." Ill.Rev.Stat. ch. 38, ¶ 103–5(a). Williams and Hicks were taken into the state's custody on April 6, 1983, the day of the robbery. Appellant Williams' Pro Se Brief at 10. The Illinois appellate panel found that "defendants have not established that the delays at issue were not properly attributable to them." *People v. Williams*, slip op. at 3. The court noted that both continuances of the trial date had come about by agreement between the parties and had been entered without objection. *Id.* In any event, 180 days elapsed between the appellants' initial incarceration and the commencement of their trial. Subtracting the number of days attributable to the first two continuances and a subsequent motion by the defendants to continue, the Illinois Appellate Court calculated that Williams and Hicks were brought to trial 102 days after their arrests. The court therefore denied their claim as a matter of Illinois law. Since we have jurisdiction to issue writs of habeas corpus only on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. sections 2241(c), 2254(a), we may not review the Illinois appellate court's ruling. *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Jones v. Thieret*, 846 F.2d 457, 459 (7th Cir.1988).

■■■ The district court correctly applied section 2254(a) in refusing to review the Illinois appellate court's holding. In addition, the district court properly declined to hear the appellants' allegation that they had suffered a Sixth Amendment violation as a result of the trial's delay because they had failed to present this federal question to the Illinois appellate court. *United States ex rel. Williams v. Chrans*, mem. op. at 2–3. Since Williams and Hicks have not demonstrated cause for and prejudice

Williams has failed to assert cause and prejudice for this omission. Therefore, we deem the

from their waiver either before the district court or before us, we likewise decline to review the Sixth Amendment question. *Sotelo*, 850 F.2d at 1252.

The judgment of the district court is therefore

AFFIRMED.

issue waived and decline to address it. *Sotelo*, 850 F.2d at 1252.